THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:20-cv-00260-TDS-JLW

| | |
|---|---|
| VICTORIA PETERSON, | ) |
| Plaintiff, | ) |
| v. | ) **STATE BOARD'S** |
| NORTH CAROLINA STATE BOARD OF ELECTIONS; DURHAM COUNTY BOARD OF ELECTIONS; ALEJANDRA JAVIERA CABALLERO, and WILLIE S. DARBY, | ) **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |
| Defendants. | ) |

NOW COMES Defendant North Carolina State Board of Elections ("State Board"), through undersigned counsel, to provide this Memorandum of Law in support of the State Board's Motion to Dismiss Plaintiff's Amended Complaint.

## NATURE OF THE CASE

On March 18, 2020, Plaintiff, Victoria Peterson ("Peterson"), filed her Complaint in this action naming the State Board, the Durham County Board of Elections ("Durham Board"), and Alejandra Javiera Caballero ("Caballero"). [D.E. 2]. On July 20, 2020, Plaintiff filed an Amended Complaint with the Court, which does not appear to have changed the allegations. [D.E. 8]. Peterson generally alleges that Caballero, a candidate for Durham City Council in 2019, did not provide proof, to the satisfaction of Plaintiff, that she is a citizen of the United States, which is required to run for, or hold, public office in the City of Durham. *Id*., pp. 1-2. Plaintiff further alleges that she filed an election protest

1

under state law concerning Caballero's election, which was improperly dismissed by the Durham Board, the State Board, and the North Carolina Superior Court of Wake County. *Id.*, pp. 2-4.

On July 20, 2020, the State Board was served with a summons, amended complaint, and complaint. [D.E. 9, p. 6]. On August 4, 2020, the State Board filed a request for a docket correction and motion for extension of time to respond to the amended complaint. [D.E. 13]. On August 10, 2020, the Court granted the State Board's motion for an extension of time within which to answer or otherwise respond to August 31, 2020. See the Court's August 10, 2020 Text Only Order. Therefore, this motion is timely. *Id*.

On August 4, 2020, Defendant Caballero filed a motion to dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(1) and 12(b)(6), and supported by a memorandum of law. [D.E. 15, 16]. On August 24, 2020, the Durham Board filed a motion to dismiss supported by a memorandum of law pursuant to Rules 12(b)(1) and 12(b)(6). [D.E. 19 and 20]. On August 27, 2020, Plaintiff filed a motion for an extension of time to respond. [D.E. 25].

The Court lacks subject matter jurisdiction because Plaintiff's Amended Complaint does not present a federal question, but instead is an appeal of a state court matter to federal court, in violation of the *Rooker-Feldman* doctrine. Furthermore, the allegations are insufficient to state a claim upon which relief can be granted. As a result, Plaintiff's claim should be dismissed.

## STATEMENT OF FACTS

A. Plaintiff's Allegations

Presenting the facts in the light most favorable to the Plaintiff, she alleges the following: Peterson and Caballero were candidates for the Durham City Council in the October 8, 2019 municipal at-large primary election. [D.E. 8, p. 2]. Peterson claims that Caballero made statements to the public that her family brought her to the United States from Chile when she was a child. *Id*. Peterson further claims that Caballero never made any statement that she was a citizen and "[s]he never told the electorate that she had received her immigration certificate allowing her to vote and run for public office." *Id*.

Two weeks prior to the primary election, Peterson states that she reviewed Caballero's voter registration application and it contained an affirmation by Caballero that she was a citizen of the United States. *Id*. Nonetheless, Peterson disregards this affirmation by Caballero, and speculates that it is improbable. *Id.*

On October 10, 2019, the day after Peterson's seventh place finish in the primary in which the top six advanced, she filed an election protest with the Durham County Board of Elections, contending that Caballero did not affirmatively prove she was a citizen of the United States. *Id.*, p. 3. On October 11, 2019, the matter was given preliminary consideration by the Durham Board and was unanimously dismissed pursuant to N.C. Gen. Stat. § 163-182.10(a)(1) for failing to establish probable cause that an election violation, irregularity, or other misconduct occurred. *Id.*

On October 14, 2019, Peterson filed an appeal with the State Board pursuant to N.C. Gen. Stat. § 163-182.11. *Id.*, p. 3. In response, the State Board's Executive Director

3

reviewed the appeal and recommended to the members of the State Board that the appeal be administratively dismissed, as it failed to comply with statutory filing requirements for election protest appeals and failed to allege the candidate was not eligible to run for the office sought. *Id*. Pursuant to state law, the matter was administratively dismissed when no member of the State Board raised any objection to the recommendation of the Executive Director. *Id.*

Peterson then filed a petition for judicial review of the State Board's decision with the North Carolina Superior Court of Wake County. *Id.*, p. 4. The Superior Court dismissed Peterson's petition. *Id.* In this action, Peterson claims she is entitled to punitive damages in the amount of $750,000 from the State Board, $350,000 from the Durham County Board of Elections, and compensatory damages in the amount of $150,000 from the State Board, and $150,000 from the Durham County Board of Elections. *Id.*, pp. 4-5.

B. <u>The Governing Statutes and State Court Procedural History</u>

At issue are three statutes that govern the procedures by which a person may bring an election protest before a county board of elections, N.C. Gen. Stat. § 163-182.10, appeal that decision to the State Board, *id.* § 163-182.11, and seek judicial review of that decision in the North Carolina Superior Court of Wake County, *id.* § 163-182.14.

Pursuant to § 163-182.10, once a protest is filed, preliminary consideration is required in which "[t]he county board shall, as soon as possible after the protest is filed, meet to determine whether the protest substantially complies with G.S. 163-182.9 and whether it establishes probable cause to believe that a violation of election law or irregularity or misconduct has occurred. If the board determines that one or both

4

requirements are not met, the board shall dismiss the protest." *Id.* § 163-182.10(a)(1).

Peterson's Amended Complaint establishes that this statute was followed by the Durham Board. She alleges that she filed her protest on October 10, 2019, the Durham Board convened on October 11, 2019 to conduct its required preliminary consideration, and after finding that it lacked probable cause pursuant to § 163-182.10(a)(1), it unanimously dismissed the protest. [D.E. 8, p. 3].

Pursuant to § 163-182.11, a petitioner is able to appeal the county board's decision to the State Board. N.C. Gen. Stat. § 163-182.11(a); and [D.E. 8, pp. 3-4]. Any such appeal must use the form and content required under the governing state administrative code, 8 N.C. Admin. Code § 02.0111. *Id.* Furthermore, pursuant to 8 N.C. Admin. Code § 02.0114(b) and (e), when an election protest appeal is filed with the State Board, the executive director shall review the allegations and evidence presented, and if the executive director finds that the filing must be dismissed as frivolous, she *shall* recommend administrative dismissal, citing the applicable defects and the requirements of the Rule.

This is what happened before the State Board, which Peterson admits in her Amended Complaint by incorporating the Administrative Dismissal Recommendation issued by Executive Director Karen Brinson Bell on October 16, 2020. [D.E. 8, p. 3]. However, Peterson's quotation omits the three immediately preceding paragraphs that establish three separate defects in the appeal that justified administrative dismissal. *Id.* Specifically, petitioner failed to use the correct form, and in doing so, failed to provide all required information that resulted in material omissions, including that she read the governing regulations, and failed to identify grounds for an appeal or any portion of the

5

Durham Board's order with which she disagrees.  See the Administrative Dismissal Recommendation[1], attached to the Affidavit of Katelyn Love as **Exhibit A**.  She also failed to allege a violation of election law or irregularity or misconduct sufficient to cast doubt on the results of the election.  *Id*.  Finally, she presented no evidence to conclude that the candidate, Caballero, was not a naturalized citizen.  *Id*.

Pursuant N.C. Gen. Stat. § 163-182.14, an aggrieved party has the right to appeal the State Board's decision on an election protest to the Superior Court of Wake County. N.C. Gen. Stat. § 163-182.14.  For the purposes of seeking review, the State Board's dismissal constitutes a final decision and must be served on the parties.  *Id.* §§ 163-182.14(a), (b).  Once service is completed, the aggrieved party must appeal the decision to the Superior Court of Wake County within 10 days of service.  *Id.* § 163-182.14(b). However, most vital to the appeal is that the appealing party must also seek and obtain a stay of the certification of election within 10 days of service.  *Id*.  If a party does not obtain a stay, the county board must issue its certification of election on the tenth day after the final decision of the State Board.  *Id.* (citing N.C. Gen. Stat. § 163-182.15).  Three days is added to these ten-day time periods when a party is served via mail or a designated delivery

---

[1] Generally, extrinsic evidence should not be considered on a Rule 12(b)(6) motion, unless the document is "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge it authenticity." *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (alterations in original) (quoting *Phillips v. LCI Int'l, Inc.,* 190 F.3d 609, 618 (4th Cir. 1999)).

Additionally, this Court may take judicial notice of these documents as they are official government records that are publicly available on the State Board's website. *Fauconier v. Clarke*, 652 F. App'x. 217, 220 (4th Cir. 2016); *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of matters of public record"); *see also* Fed. R. Evid. 201.  This document can be accessed online at: https://s3.amazonaws.com/dl.ncsbe.gov/State_Board_Meeting_Docs/Orders/Administrative%20Dismissal%20of%20Protests/Peterson_Admin%20Dismissal_2019.pdf

service. *Id.* (incorporating the three-day allowance under N.C. Gen. Stat. 1A-1, Rule 6(e)).

The State Board mailed its decision to Peterson on October 23, 2019 via FedEx, and Peterson received it on October 24, 2019. See the FedEx proof-of-delivery, attached to the *Love Aff.* as **Exhibit B**. Thus, pursuant to § 163-182.14(b), Peterson had until November 5, 2019 to file her petition for review and obtain a stay, which was 13 days after service via FedEx. The State Board's service of its decision also included a copy of § 163-182.14 and expressly alerted Peterson of her obligation to obtain a stay. **Ex. A, p. 5**. On November 4, 2019, Peterson filed a complaint with the Superior Court of Wake County, but failed to take any action to seek or obtain a stay. See Peterson's Wake County Superior Court Complaint[2], attached to the *Love Aff.* as **Exhibit C**. On December 2, 2019, nearly a full month after Plaintiff should have obtained a stay, the Durham Board issued a certificate of election to Caballero in her successful election to the Durham City Council. See the Certificate of Election[2], attached to the *Love Aff.* as **Exhibit D**. When these facts were brought to the attention of the Superior Court through the State Board's motion to dismiss, the Superior Court found that Plaintiff's failure to obtain a stay resulted in the court lacking jurisdiction pursuant to N.C. Gen. Stat. § 163-182.14(b) because a certificate of election had issued rendering the matter moot. See the February 14, 2020 Order of Dismissal[2], attached to the *Love Aff.* as **Exhibit E**.

---

[2] For the same reasons stated in footnote one above the Court may take judicial notice of these documents.

## QUESTIONS PRESENTED

I. Does this Court lack subject matter jurisdiction pursuant to Rule 12(b)(1) because (1) the Amended Complaint does not present a federal question, and (2) this action violates the *Rooker-Feldman* doctrine?

II. Does Plaintiff's Amended Complaint fail to state a claim upon which relief can be granted pursuant to Rule 12(b)(6)?

## LEGAL ARGUMENT

### I. This Court Lacks Subject Matter Jurisdiction Over This Claim.

This Court lacks subject matter jurisdiction over this claim because (A) it fails to present a federal question, and (B) it is nothing more than an appeal of a state court matter to this Court in violation of the *Rooker-Feldman* doctrine.

The standard of review for lack of subject matter jurisdiction pursuant to a motion to dismiss under Rule 12(b)(1) is set forth generally in *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Plaintiff bears the burden of proving subject matter jurisdiction on a motion to dismiss. *Id.*; *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). "Without jurisdiction the court cannot proceed at all in any cause." *Stop Reckless Econ. Instability Caused By Democrats v. FEC*, 814 F.3d 221, 228 (4th Cir. 2016) (quoting, *Ex parte McCardle*, 74 U.S. 506, 514 (1868)).

In the present case, the State Board relies on the face of the Amended Complaint to support its Rule 12(b)(1) challenge to subject matter jurisdiction, because the Amended Complaint reveals no federal question. The State Board's dismissal argument under the *Rooker-Feldman* doctrine is supported by both the Amended Complaint and the public documents from the related state court matter that are incorporated by reference into the

8

Amended Complaint.

Where a defendant raises a facial challenge based only on the facts as alleged by the Plaintiff in the complaint, the court accepts those facts as true similar to its review of a Rule 12(b)(6) motion. *Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018). When a defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647; *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004).

**A. Plaintiff Fails to Present a Federal Question.**

First, this Court lacks subject matter jurisdiction because the claim presented does not involve a federal question. In order to establish federal question jurisdiction, the action must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "'The mere assertion of a federal claim' does not confer subject matter jurisdiction under § 1331." *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (citing *Davis v. Pak*, 856 F.2d 648, 650 (4th Cir. 1988) (dismissing § 1983 claims for lack of subject matter jurisdiction because the federal claims were insubstantial and were pretextual state claims).

Moreover, "it is essential to jurisdiction that a substantial federal question should be presented." *Hagans v. Lavine*, 415 U.S. 528, 537 (1974) (quoting *Ex parte Poresky*, 290 U.S. 30, 31-32 (1933)). This requirement of "substantiality is especially important where

9

a wholly frivolous federal claim serves as a pretext to allow a state law issue, the real focus of the claim, to be litigated in the federal system." *Lovern,* 190 F.3d at 655 (citing *Hagans*, 415 U.S. at 536). The Fourth Circuit has reiterated that "federal courts must guard against the litigant who frames a pretextual federal issue solely for the purpose of having a state-law claim adjudicated in the federal system; Article III of the Constitution forbids this practice." *Id.* (citations omitted).

This is precisely the claim presented by Plaintiff in this matter. Peterson asserts, without explanation or basis, that jurisdiction is based upon a federal question and cites to the Fourteenth and Fifteenth Amendments of the United States Constitution for the purpose of defining citizenship and the right of citizens to vote. [D.E. 8, p. 1]. However, the remainder of her allegations are entirely based upon North Carolina General Statutes, and the decisions of state entities—the Durham Board, the State Board, and the Superior Court of Wake County—which were following those statutes. [D.E. 8]. This type of bare-bones pretextual assertion of a federal question is not sufficient to overcome the requirement that jurisdiction only exists when a substantial federal question is presented. *Hagans*, 415 U.S. at 536. Peterson's claims are also frivolous because she failed to present any reliable evidence, failed to follow proper procedures, and her matter was properly dismissed in state court, which is explained below in Part I-B and Part II and incorporated herein.

### B. Plaintiff Appeals a State Court Decision in Violation of the *Rooker-Feldman* Doctrine.

Second, this Court lacks subject matter jurisdiction because Plaintiff is seeking to appeal the final judgment of a state court matter to this court in violation of the *Rooker-*

10

*Feldman* doctrine. The *Rooker-Feldman* doctrine prevents a party who has lost a state court action from seeking review and reversal of that order in federal district court. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 281 (2005). It applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 284. In short, "the doctrine simply precludes federal district courts from exercising what would be, in substance, appellate jurisdiction over final state-court judgments." *Hulsey v. Cisa*, 947 F.3d 246, 250 (4th Cir. 2020) (citing *Thana v. Bd. Of License Comm'rs*, 827 F.3d 314, 219 (4th Cir. 2016)).

Generally, federal district courts do not have jurisdiction to review state court decisions. Instead, those decisions should be heard exclusively on appeal "with superior state courts and, ultimately, the United States Supreme Court." *Plyler v. Moore*, 129 F.3d 728, 731, (4th Cir. 1997). Of note to this matter, the doctrine specifically bars constitutional claims "that are 'inextricably intertwined with' questions ruled upon by a state court, as when success of the federal claim depends on a determination 'that the state court wrongly decided the issues before it.'" *Id.* at 731-32 (quoting *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995)); *see Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring in the judgment) ("Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment."). "Put another way, if 'in order to grant the federal plaintiff the relief sought, the federal court must determine that the [state] court judgment was erroneously

entered or must take action that would render the judgment ineffectual,'" *Rooker-Feldman* is implicated." *Jordahl v. Democratic Party*, 122 F.3d 192, 202 (4th Cir. 1997) (quoting *Ernst v. City of Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997); and citing *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995)).

Here, in Peterson's own words, she believes that her case before the Superior Court of Wake County was improperly dismissed, and she "filed in this court to seek further redress from the decision of the Durham County Board of Elections and the North Carolina State Board of Elections." [D.E. 8, p. 4]. She asserts that she is "requesting a hearing with [this Court] about [her] concerns with these voting issues and immigration problems." *Id*. Even if she had properly stated a constitutional right which required vindication, which she has not, Peterson clearly establishes through her own allegations that she lost her state court action and has only filed in this Court in order to reverse that ruling in violation of the *Rooker-Feldman* doctrine.

Moreover, based upon Plaintiff's repeated references to the decision of the State Board and the Superior Court of Wake County, which are public records, those documents should be considered integral to Plaintiff's allegations, incorporated into the Amended Complaint, and this Court is permitted to take judicial notice of the same. Even if the Court chose not to do so, then Peterson's allegations should only be considered as mere evidence on the issue, and the Court should still consider these documents without converting this matter to a motion for summary judgment. *Richmond,* 945 F.2d at 768; *Evans*, 166 F.3d at 647; *Velasco*, 370 F.3d at 398; *Bain*, 697 F.2d at 1219.

This evidence demonstrates that Peterson failed to submit a viable protest to the

12

State Board (**Ex. A**), was duly informed why it was dismissed (**Ex. B**), filed a timely complaint with the Superior Court of Wake County, but failed to timely move for a stay as required under North Carolina law (**Ex. C**, and § 163-182.14(b)), resulting in the matter being properly dismissed by that court. **Ex. E.** Plaintiff's Amended Complaint is nothing more than an appeal to federal court of that state court dismissal, in violation of the *Rooker-Feldman* doctrine. The Amended Complaint should therefore be dismissed for lack of subject matter jurisdiction.

## II. Plaintiff Fails to State a Claim Upon Which Relief Can Be Granted.

Should this Court determine that subject matter jurisdiction exists, Plaintiff's Amended Complaint should still be dismissed because it fails to state a claim upon which relief can be granted.

When considering a motion to dismiss under Rule 12(b)(6), "a court must accept the factual allegations of the complaint as true." *G.E. Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" *Id.* at 663 (quoting *Twombly*, 550 U.S. at 570)).

A claim is only facially plausible when it sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

13

alleged." *Id*. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (quoting *Twombly*, 550 U.S. at 555, 557) (internal brackets and quotation marks omitted). The Fourth Circuit has held that courts are not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

In evaluating a Rule 12(b)(6) motion, the Court considers the allegations in the Complaint and any materials incorporated therein, as well any document submitted by the movant that is "integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). The Court may also take judicial notice of public records when considering a Rule 12(b)(6) motion. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (recognizing that a court may consider during Rule 12(b)(6) review any "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Hall v. Virginia*, 385 F.3d 421, 424 & n.3 (4th Cir. 2004) (taking judicial notice of information publicly available on official government website). *See also* Fed. R. Evid. 201.

Here, Plaintiff has failed to define any claim, much less state a full claim upon which relief can be granted. At most, Plaintiff's Amended Complaint provides a one-sided version of the procedural history of her election protest, and the dismissals entered by the Durham Board, the State Board, and the Superior Court of Wake County. [D.E. 8, pp 1-

14

5]. It then states in a conclusory fashion that she thinks this was wrong, and that she is entitled to punitive and compensatory damages totaling more than a million dollars. *Id.* p. 6. Even taking her version of the events as true, she fails to allege any facts that would support a violation of her constitutional rights under the Fourteenth or Fifteenth Amendments of the United States Constitution, or North Carolina law.

Whatever her intended claim, Plaintiff fails to properly assert the one central allegation that forms the premise of that claim. Specifically, her claims rely exclusively on the allegation that Caballero has not provided sufficient proof that she is a United States Citizen. The only documentary evidence referenced in the Amended Complaint on this issue is Caballero's own voter registration application in which Caballero affirmed she is a citizen of the United States. [D.E. 8, p. 2]. The essence of Peterson's case, and the reason why both Boards dismissed it, is that she has a baseless suspicion about Caballero's citizenship that is unsupported by evidence. Even taking the facts in the light most favorable to Plaintiff, she has failed to properly support the foundational allegation of any claim she is attempting to assert.

Moreover, the law she does refer to does not support any claim. With respect to the Fourteenth Amendment, Peterson cites to Section 1, and quotes the first sentence, "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." [D.E. 8, p. 1]. This partial recitation of Section 1 appears to serve the purpose of defining U.S. citizenship. *Id.* Peterson does not explain why she cited to this portion of Section 1, nor does she raise any cause of action that relies on Section 1. *Id.* This first sentence in Section 1 "unambiguously

15

overruled this Court's contrary holding in *Dred Scott* v. *Sandford*, 60 U.S. 393 (1857), that the Constitution did not recognize black Americans as citizens of the United States or their own State. *McDonald v. City of Chi.*, 561 U.S. 742, 807-08 (2010). Peterson's allegations are unrelated to this portion of Section 1, thus, it has no bearing on this matter and cannot be the basis of a claim.

As for the Fifteenth Amendment, Peterson's citation is even less relevant as she cites to Section 1 for the proposition that the right of citizens to vote shall not denied on account of race or color. [D.E. 8, p. 1]. Again, she appears to be citing this for the inverse proposition that only United States citizens may run for office. *Id.* She does not explain what cause of action she is trying to bring under the Fifteenth Amendment, if any, or lay out any allegations that relate or suggest that any person, much less herself, was denied the right to vote on account of their race or color. *Id.*, pp. 1-5.

More fundamentally, the Fourteenth and Fifteenth Amendments are not candidate qualification provisions. Both Amendments establish the basis for U.S. citizenship for the purposes of protecting the rights of citizens. *See* U.S. Const. amend. XIV, § 1 ("No state shall make or enforce any law which shall *abridge the privileges or immunities of citizens of the United States . . . .*" (emphasis added)); *id.*, amend. XV, § 1 ("The right of citizens of the United States to vote *shall not be denied or abridged* by the United States or by any state on account of race, color, or previous condition of servitude." (emphasis added)). They do not establish any qualifications to run for or hold office. In fact, the only officeholder qualifications found in the federal Constitution are those for *federal* officeholders: President, U.S. Senator, and U.S. Representative. *See id.*, art. I, §§ 2, 3; *id.*,

16

art. II, § 1.  There are no federal qualifications to run for the Durham City Council.  Those qualifications are found in state law.  *See* N.C. Const. art. VI; N.C. Gen. Stat. § 163-294.2.

Finally, as argued above in Section I-B, Peterson has failed to allege sufficient facts to state a claim upon which relief can be granted pursuant to the relevant North Carolina statutes.  Even if she had, this Court should not grant supplemental jurisdiction over those claims because there is no federal claim at issue here.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims against the State Board should be dismissed because the Court lacks subject matter jurisdiction and Plaintiff fails to state a claim upon which relief can be granted.

Respectfully submitted this the 31st day of August, 2020.

> **JOSHUA H. STEIN**
> **Attorney General**
>
> /s/ Terence Steed
> Terence Steed
> Special Deputy Attorney General
> N.C. State Bar No. 52809
> E-mail: tsteed@ncdoj.gov
>
> Paul M. Cox
> Special Deputy Attorney General
> N.C. State Bar No. 49146
> E-mail: pcox@ncdoj.gov
>
> Special Litigation Section
> N.C. Department of Justice
> P.O. Box 629
> Raleigh, NC  27602-0629
> Telephone:  (919) 716-6567
> Facsimile:  (919) 716-6761
> *Attorneys for State Board*

## CERTIFICATION OF WORD COUNT

I hereby certify that pursuant to Local Rule 7.3(d), that the **STATE BOARD'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** has a word count of 4,513 words not including the caption, signature block, certificate of service and certification of word count. Therefore, the memorandum complies with Local Rule 7.3(d), which limits the word count to 6,250 words. I further certify that I have prepared this document in Microsoft Word, from which the word count is generated.

Dated this 31st day of August, 2020.

/s/ Terence Steed
Terence Steed
Special Deputy Attorney General

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I electronically filed the State Board's Memorandum of Law in Support of Motion to Dismiss with the Clerk of the Court using the CM/ECF system which provides automatic electronic service to all counsel of record, and on the same date I mailed a copy of same via U.S. Postal Service addressed as follows:

Victoria Peterson
810 Ridgeway Ave
Durham, North Carolina 27701

Respectfully submitted this the 31st day of August, 2020.

/s/ Terence Steed
Terence Steed
Special Deputy Attorney General

19

Case 1:20-cv-00260-TDS-JLW   Document 28   Filed 08/31/20   Page 19 of 19